UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRODUCT SOLUTIONS
INTERNATIONAL, INC.,

      Plaintiff,

vs.

P.B. PRODUCTS, LLC d/b/a
ORGO, *et al.*,

      Defendants.
_____/

Civil Action No. 19-cv-12790
HON. BERNARD A. FRIEDMAN

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I.   Introduction

Production Solutions International, Inc. ("PSI") commenced this diversity breach of contract action against, among others, P.B. Products, LLC (hereinafter, "Orgo"). PSI alleges that Orgo declined to buy the amount of travel bags specified in the parties' blanket purchase order.

Before the Court is Orgo's motion for summary judgment. (ECF No. 33). PSI responded. (ECF No. 36). Orgo filed a reply. (ECF No. 42). The Court will decide the motion without oral argument pursuant to E.D. Mich. LR 7.1(f)(2). For the following reasons, the Court shall grant Orgo's motion.

II.   Background

   A.   *Factual History*

PSI is a Massachusetts-based corporation that assists domestic businesses with manufacturing their products overseas. (ECF No. 1, PageID.1, 3, ¶¶ 1, 9-10; ECF No. 33-2, PageID.341, Tr. 20:1-9; ECF No. 33-3, PageID.399, Tr. 19:2-10). Darlene Flaig is the company's founder, president, and chief executive officer. (ECF No. 33-2, PageID.340-41, Tr. 19:2-5, 20:22). PSI often contracts with third-party international manufacturers, some of whom are in China. (ECF No. 1, PageID.3, ¶ 10; ECF No. 33-2, PageID.352-53, Tr. 33:22-34:1; ECF No. 33-3, PageID.403-04, Tr. 25:20-26:1-14).

In August 2015, an independent sales representative contacted PSI about facilitating the production of Orgo's cosmetic travel bags. (ECF No. 33-2, PageID.349, Tr. 28:6-24; ECF No. 33-3, PageID.400, Tr. 20:23-25). By October, the parties began coordinating their efforts to bring the travel bags to market. (ECF No. 1, PageID.63). PSI secured a third-party Chinese manufacturer to purchase the necessary raw materials and produce the bags. (ECF No. 33-4, PageID.414-15).

Orgo formalized its arrangement with PSI on January 25, 2016, by issuing a blanket purchase order for "100,000 pieces" (travel bags) at a price of $8.76 each. (ECF No. 33-1, PageID.335). The blanket order contemplated that the manufacturer

2

would produce and ship the travel bags directly to Orgo, but only in the quantities that Orgo specified in subsequent purchase order releases to PSI. (*Id.*).

Three days after Orgo issued the blanket purchase order, PSI issued a separate purchase order to the manufacturer. (ECF No. 33-4, PageID.414-15). This second order committed PSI to purchasing 100,000 bags on Orgo's behalf during a one-year period spanning from March 1, 2016 through March 1, 2017. (*Id.*, PageID.415). It provides that "[a]ny changes" to the purchase order "must be approved in writing by PSI, Inc." and that the travel bags "should be produced per PSI specifications." (*Id.*).

Orgo's blanket purchase order to PSI, together with PSI's separate purchase order to the manufacturer, established the following course of performance between Orgo, PSI, and the manufacturer:

> *First* – Orgo would issue a purchase order release to PSI for a specific amount of travel bags. (ECF No. 33-2, PageID.348, 357, 373, Tr. 27:14-15, Tr. 53:17-22, Tr. 121:5-9);
>
> *Second* – PSI would invoice Orgo for each purchase order release; the total price included PSI's transactional mark-up. (*Id.*, PageID.348, 358-59, Tr. 27:21-22, Tr. 54:22-55:10);
>
> *Third* – after receiving Orgo's deposit, PSI would issue its own purchase order to the manufacturer (corresponding to the amount of travel bags Orgo requested) and forward the manufacturer its own deposit. (*Id.*, PageID.348, 357, 373, 378, Tr. 27:14-15, Tr. 53:5-9, Tr.121:13-25, Tr. 126:4-12);
>
> *Fourth* – once the manufacturer produced the bags and shipped them directly to Orgo, Orgo would pay the remainder of PSI's invoice. (*Id.*, PageID.346, 373-74, 380, Tr. 25:12-15, Tr. 121:21-122:8, Tr. 133:14-24).

3

> *Fifth* – PSI would retain its mark-up as profit and forward the remaining amount of Orgo's invoice payment to the manufacturer to cover the cost of production. (*Id.*, PageID.380, Tr. 133:14-24).

Orgo issued four purchase order releases over the next two years (and PSI issued corresponding invoices) in the following quantities:

| Date | Invoice Number | Units (quantity of bags) |
|---|---|---|
| February 17, 2016 | 3358 | 11,088 |
| June 8, 2016 | 3403 | 11,232 |
| August 9, 2016 | 3406 | 11,232 |
| August 15, 2017 | 3506 | 4,752 |

(ECF No. 1, PageID.70, 72, 74, 76). Orgo paid each of these invoices in full, but declined to order any more travel bags from PSI. (*Id.*, PageID.7-8, ¶¶ 27-30, 34, 36-38). Orgo purchased 38,304 travel bags altogether – well below the 100,000 units that PSI believes Orgo committed to buying in the blanket purchase order. (*Id.*, PageID.8, ¶ 35).

  B. *Procedural History*

PSI initially filed this lawsuit against Orgo and several related defendants, alleging causes of action for breach of contract (Count I), promissory estoppel (Count II), fraud (Count III), silent fraud (Count IV), negligent misrepresentation (Count V), innocent misrepresentation (Count VI), and non-acceptance of

4

conforming goods under the Uniform Commercial Code (Count VII). (ECF No. 1, PageID.9-17, ¶¶ 41-85). The defendants moved to dismiss the complaint for failing to state a plausible claim for relief. (ECF No. 5, PageID.96-124).

In its June 12, 2020 opinion and order, the Court granted the motion in part and denied it part. (ECF No. 11, PageID.175-82). The opinion and order dismissed PSI's tort claims (Counts III-VI), dismissed every defendant other than Orgo, and allowed PSI's contract-based claims (Counts I-II, and VII) to proceed to discovery. (*Id.*, PageID.182). Orgo now moves for summary judgment on the remaining claims. (ECF No. 33, PageID.294-417).

III. Legal Standards

A moving party is entitled to summary judgment where the "materials in the record" do not establish the presence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c). All the evidence, along with all reasonable inferences, must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Since PSI invoked the Court's diversity jurisdiction, "the State of Michigan's version of the Uniform Commercial Code" is controlling. *Martin v. Joseph Harris Co.*, 767 F.2d 296, 299 (6th Cir. 1985); *see also Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003) (stating that federal courts sitting in their diversity jurisdiction apply the substantive law of the forum state).

IV.   Analysis

    A.   *The UCC Claim Is the Sole Remaining Cause of Action*

UCC Article 2 expressly "applies to transactions in goods." Mich. Comp. Laws § 440.2102. "Goods" are "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale . . ." Mich. Comp. Laws § 440.2105(1). Since neither party contests that (1) Orgo agreed to purchase travel bags from PSI, and (2) the travel bags fall within the statutory definition of "goods," the UCC governs their contractual dispute. (ECF No. 33, PageID.302; ECF No. 36, PageID.434-443). And because the UCC provides the "exclusive" remedy for "economic losses resulting from the commercial sale of goods," PSI cannot proceed with its common law breach of contract claim (Count I). *Neibarger v. Universal Cooperatives*, 439 Mich. 512, 537-38 (1992); *see also Green Leaf Nursery, Inc. v. Kmart Corp.*, No. 05-40162, 2006 U.S. Dist. LEXIS 16566, at *4-5 (E.D. Mich. Feb. 28, 2006) (holding that the availability of UCC remedies precludes common law breach of contract claims).

The promissory estoppel claim poses a separate issue. "Promissory estoppel is not a doctrine designed to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove breach of contract." *General Aviation v. Cessna Aircraft Co.*, 915 F.2d 1038, 1042 (6th Cir. 1990) (quotation omitted). So "where the parties have an enforceable contract and merely dispute its terms, scope,

or effect, one party cannot recover for promissory estoppel . . ." *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 181 (6th Cir. 1996) (citation omitted).

Neither party here questions whether the blanket purchase order is an enforceable contract. They instead part ways over whether the blanket order committed Orgo to purchasing 100,000 travel bags within the allotted time frame. Since PSI's contractual performance under the blanket purchase order equally "satif[ies] the detrimental reliance requirement of [its] promissory estoppel" claim (Count II), that cause of action cannot withstand summary judgment. *General Aviation*, 915 F.2d at 1042. As a result, PSI's sole remaining claim is for non-acceptance of conforming goods under the UCC (Count VII).

B.   *Overview of Applicable UCC Remedies*

The UCC generally aims to place "the aggrieved party . . . in as good a position as if the other party had fully performed" the contract. Mich. Comp. Laws § 440.1305(1). Damage awards that "fail to adhere to this principle" are *per se* unreasonable. *Diversified Energy, Inc. v. TVA*, 339 F.3d 437, 446 (6th Cir. 2003) (cleaned up); *see also Cincinnati Fluid Power, Inc. v. Rexnord, Inc.*, 797 F.2d 1386, 1393 (6th Cir. 1986).

Mich. Comp. Laws § 440.2703 delineates the remedies available to the seller when the buyer "repudiates" their contract. Of those listed, PSI seeks to recover the travel bags' contract price, or in the alternative, the lost profits stemming from

7

Orgo's purported breach. (ECF No. 1, PageID.17, ¶¶ 82-84). *See* Mich. Comp. Laws § 440.2703(e).  Both avenues of relief are foreclosed to PSI.

        1.      The Contract Price

Sellers may recover their contract price under the UCC so long as the buyer has already accepted the goods. Mich. Comp. Laws § 440.7209(1)(a).  There are two exceptions to this general rule: (1) where "conforming goods" are "lost or damaged within a commercially reasonable time after risk of their loss has passed to the buyer," or (2) where the goods are "identified to the contract" and the seller is not reasonably able to resell them. Mich. Comp. Laws § 440.7209(1)(a)-(b).  Goods are "identified" to a contract "for the sale of future goods" when they are "shipped, marked or otherwise designated by the seller as goods to which the contract refers." Mich. Comp. Laws § 440.2501(1)(b).

PSI is not entitled to the contract price of the unpurchased travel bags.  Orgo never accepted unpurchased travel bags from PSI.  There is no evidence that unpurchased travel bags were ever "lost or damaged" after the risk of their loss had passed to PSI.  And Flaig testified that PSI did not manufacture, ship, store, or otherwise designate unpurchased travel bags for Orgo. (ECF No. 33-2, PageID.350-51, 362, Tr. 31:20-32:6; Tr. 58:13-22). Only the manufacturer produced and shipped travel bags directly to Orgo, and even then, only in the amount that Orgo specified

8

in each purchase order release. (*Id.*, PageID.348, 357, Tr. 27:14-18, Tr. 53:17-22). Therefore, PSI cannot obtain the contract price.

### 2. Lost Profits

Sellers may still recover damages for the nonacceptance of conforming goods even when they are precluded from recovering the contract price. Mich. Comp. Laws § 440.2709(3). The UCC supplies two methods for calculating the seller's damages in this event.

Mich. Comp. Laws § 440.2708(1) affords sellers a "traditional contract-market differential recovery." 1 White, Summers, & Hillman, Uniform Commercial Code § 8:13 (6th ed. Nov. 2021 Update). The formula is straightforward; it is the difference between the market price at the time and place for tender and the unpaid contract price. Mich. Comp. Laws § 440.2708(1). The seller may also recover incidental damages, less any expenses saved as the result of the buyer's breach. *Id.*

Where sub-section (1)'s remedy falls short of placing the seller "in as good a position as" full performance, sub-section (2) authorizes the seller to recover its lost profits. Mich. Comp. Laws § 440.2708(2). PSI exclusively seeks the lost profits it would have earned from Orgo's full performance of the blanket purchase order because it views the travel bags as "branded, specialty goods for which resale was impracticable." (ECF No. 36, PageID.438 n.2; *see also* ECF No. 1, PageID.17, ¶ 84). PSI defines its lost profits as the difference between the price it would have

9

charged Orgo for the unpurchased travel bags and the amount it would have paid the manufacturer to produce those same bags, *i.e.*, PSI's transactional mark-up.

But while the company's lost profits are simple enough to ascertain, Flaig's deposition testimony scuttles any prospect of recovering them. Fed. R. Civ. P. 32(a)(3) allows an adverse party to "use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)." As PSI's chief executive officer and president – as well as the company's Rule 30(b)(6) designee – Flaig's testimony is binding on PSI. *Kelly Servs. v. Creative Harbor, LLC*, 846 F.3d 857, 867 (6th Cir. 2017); *see also Vehicle Mkt. Research, Inc. v. Mitchell Int'l, Inc.*, 839 F.3d 1251, 1261 (10th Cir. 2016) (holding that Rule 30(b)(6) witness testimony may constitute as an evidentiary admission); *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 34 (2d Cir. 2015) (stating that "an organization's deposition testimony is 'binding' in the sense that whatever its deponent says can be used against the organization.").

Flaig expressly waived PSI's claim to its lost profits during the following exchange at her deposition:

> Counsel: I think I saw an E-mail that you had represented, or somebody from PSI represented to Orgo that it was not seeking to recover its markup or its fee on this contract, and that everything [PSI] recovered would be paid to the [manufacturer]. I'm asking if you remember that.
>
> Flaig: Yes, that is correct; we did make that concession.

10

> Counsel: All right. And does that still stand today?
>
> Flaig: Yes, it does.

(ECF No. 33-2, PageID.354, Tr. 35:15-22). And Flaig reiterated this position after conceding that PSI no longer sought to recover its mark-up, but "just want[ed] the [manufacturer] to be whole." (*Id.*, PageID.383, Tr. 142:9-15).

Because Flaig disclaimed PSI's entitlement to its lost profits they are no longer recoverable. *See Bonn Operating Co. v. Devon Energy Prod. Co.*, No. 06-734, 2008 U.S. Dist. LEXIS 139119, at *7 (N.D. Tex. Aug. 29, 2008) (holding that company was not entitled to damages after co-founder and managing partner waived them during his deposition); *Old Dominion Elec. Coop. v. Ragnar Benson, Inc.*, No. 05-34, 2006 U.S. Dist. LEXIS 56145, at *147-48 (E.D. Va. Aug. 4, 2006) (holding that company was not entitled to category of damages after Rule 30(b)(6) deponent waived them).

### 3. The Manufacturer's Losses

PSI lastly seeks to recover the money it claims to owe the manufacturer as an offset against the manufacturer's losses. (ECF No. 33-2, PageID.389, Tr. 152:9-15; ECF No. 36, PageID.446).

The UCC prohibits awarding consequential damages "except as specifically provided in this act or by other rule of law." Mich. Comp. Laws § 440.1305(1). Although the statute expressly authorizes *buyers* to recover this form of damages,

11

there is no analogous provision for *sellers* like PSI. *Compare* Mich. Comp. Laws § 440.2715(2) *with* Mich. Comp. Laws §§ 440.2708(2), 440.2710; *see also* 1 White, Summers, & Hillman, Uniform Commercial Code § 8:29 (6th ed. Nov. 2021 Update). Courts, including the Sixth Circuit, have construed this disparity to mean that "sellers are entitled to incidental, but not consequential damages, under the U.C.C." *Firwood Mfg. Co. v. Gen. Tire, Inc.*, 96 F.3d 163, 169 (6th Cir. 1996); *see also Dietec Co., Ltd. v. Osirius Grp., LLC*, No. 17-10372, 2017 U.S. Dist. LEXIS 200276, at *17 (E.D. Mich. Dec. 6, 2017) (holding that Mich. Comp. Laws § 440.2708(2) did not permit the seller to recover consequential damages); *S. C. Gray, Inc. v. Ford Motor Co.*, 92 Mich. App. 789, 812 (1979) ("The U.C.C. does not allow the seller to recover consequential damages.").

Any third-party liability that the seller foreseeably incurs due to the buyer's breach is a form of consequential damages that is unrecoverable. *See Stamtec, Inc. v. Anson Stamping Co., LLC*, 346 F.3d 651, 657 (6th Cir. 2003) (holding that third-party manufacturer's "salvage loss charge" qualified as consequential damages and was not recoverable). Michigan courts define UCC consequential damages as those that:

> do not arise within the scope of the immediate buyer-seller transaction, but rather stem from losses incurred by the nonbreaching party in its dealings, *often with third parties*, which were a proximate result of the breach, and which were reasonably foreseeable by the breaching party at the time of contracting.

12

*S.C. Gray*, 92 Mich. App. at 811-12 (quotation omitted) (emphasis added).

PSI's attempt to recover the money it allegedly owes the manufacturer fits neatly within this framework. The evidence shows that PSI issued its own purchase orders to the manufacturer, separate from the purchase order releases that Orgo forwarded to PSI; that Orgo's purchase order releases contained different contractual terms than PSI's purchase orders to the manufacturer; and that while Orgo knew the manufacturer would be producing the travel bags, it never contracted with the manufacturer directly. (ECF No. 33-2, PageID.358, 380, Tr. 54:6-13, Tr. 133:14-24). Consequently, any money owed to the manufacturer (1) falls outside scope of the parties' "immediate buyer-seller transaction," (2) is a loss that PSI incurred because of its contractual arrangements with the manufacturer, and (3) was forseeable to Orgo. *S.C. Gray*, 92 Mich. App. at 811-12.

PSI faces yet another hurdle. Lay witnesses (*i.e.*, non-experts) may offer opinion testimony exclusively when:

> (a) it is rationally based on the witness's perception;
>
> (b) it is helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) it is not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. The Advisory Committee Notes for the 2000 Amendments to Rule 701 explain that:

13

> Most courts have permitted the *owner or officer of a business* to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, *but because of the particularized knowledge that the witness has by virtue of his or her position in the business.*

*Id.* (citation omitted) (emphasis added).

Flaig testified that PSI assisted the manufacturer with generating an invoice that calculates the outstanding balance PSI allegedly owes the manufacturer. (ECF No. 33-2, PageID.363, 382, Tr. 64:19-24, Tr. 141:9-13; ECF No. 33-5, PageID.417). But Flaig lacks personal knowledge concerning who supplied the manufacturer's figures, what the codes, quantities, and charges in the invoice represent, and whether the manufacturer's underlying data is accurate.

Because Flaig "has no basis upon which to offer lay opinion testimony" about the manufacturer's losses, and the manufacturer-generated invoice itself is hearsay, PSI cannot establish the amount of money that it allegedly owes the manufacturer.[1] *JGR, Inc. v. Thomasville Furniture Indus.*, 370 F.3d 519, 526 (6th Cir. 2004) (ruling that damages testimony was inadmissible because lay witness lacked personal knowledge about the plaintiff's losses); *see also DIJO, Inc. v. Hilton Hotels Corp.*,

---

[1] The manufacturer's invoice does not comport with the business records exception to the federal hearsay rule. *See* Fed. R. Evid. 802, 803(6), 902(11), (12).

14

351 F.3d 679, 686-87 (5th Cir. 2003) (same); *Self v. Wal-Mart Stores, Inc.*, 885 F.2d 336, 340 (6th Cir. 1989) (affirming award of summary judgment to the defendant where the plaintiff's deposition testimony demonstrated that he lacked sufficient personal knowledge "to make out a jury case.").[2] Accordingly,

IT IS ORDERED that Orgo's motion for summary judgment (ECF No. 33) is granted.

                                                s/Bernard A. Friedman
                                                Hon. Bernard A. Friedman
                                                Senior United States District Judge

Dated: October 27, 2022
       Detroit, Michigan

---

[2] Aside from offering impermissible lay witness opinion testimony about the manufacturer's losses, Flaig's deposition statements run afoul of the more basic requirement that they be predicated upon "personal knowledge of the matter." Fed. R. Evid. 602.

15